Case No. 12-5205. Lacy L. Williams, Appellant v. Barack Hussein Obama, President, Administration, Individual, and Official Capacity, et al. Mr. Capehart for the Appellant, Mr. Birch for the Appellee. Good morning, Mr. Capehart. Good morning, Your Honor, and may it please the Court. John Capehart, as court appointed amicus in support of the Appellant, Lacy Williams. This Court has confirmed three times in this case that Mr. Williams should be allowed to proceed in form apoporus because his complaint adequately alleges that he is in imminent danger of serious physical injury for purposes of the sole exception to Section 1915G's three strikes rule. There is no sound reason for the Court to depart from those rulings now, especially because this Court has already held that its prior order crediting Williams' allegations is law of the case. But should the Court choose to review the sufficiency of those allegations again, they independently require reversal of the District Court's decision because Williams' claims of prolonged and systematic neglect of his chronic health problems by prison officials fit comfortably within the boundaries of what it means to be in imminent danger under this Court's precedence. So those prior orders were just IFP on appeal? Yes, Your Honor. One was IFP on appeal, on his direct appeal. The other was IFP in his mandamus. In the mandamus. So they're not technical. Those orders did not technically resolve the question of whether IFP was appropriate in the District Court. I understand you're saying the same standard applies, but just as a matter of law of the case doctrine, that doesn't dictate that the result in the District Court. We think that in this case it most likely does, Your Honor, because the District Court was not addressing whether, or excuse me, I'm sorry, this Court was addressing specifically whether Mr. Williams was entitled to proceed under the imminent danger exception. That is a pure question of law, and it's the same question that the District Court has to apply in each case. Now, if our standard of review, though, were anything other than de novo, were deferential to the District Court, then theoretically we could conclude that IFP was appropriate on appeal, but that a reasonable District Court could go either way on that and could have come out the other way. Well, I think that's partly correct, Your Honor. Of course, the District Court retains discretion to grant or deny IFP relief, except in this case where we think that the question would not be subject to the District Court's discretion because the sole question is whether that imminent danger exception has been satisfied. And that is a pure question of law, and it's one that this Court must review de novo, and I think that it's one that would bind the District Court at any stage. You know, whether the District Court retains discretion to grant or deny IFP relief more generally, I think is a separate question than whether Mr. Williams is entitled to relief under the imminent danger clause. Why would we treat that as a de novo review, though? It seems like a mixed question, and you could go, and I know some mixed questions do get de novo review and some do not. But why would this be one that gets de novo review rather than recognize the District Court closer to the facts of the case? And I realize you're going on the complaint, but still closer to the facts of the case. Why wouldn't we be deferential? Well, I think because the question is ultimately one of statutory interpretation. It's whether Mr. Williams' complaint or the allegations in his complaint fit within the definition of imminent danger as construed in that statutory text. So, yes, I think there would be an element of discretion, say, in the IFP inquiry more generally, but with respect to this single question of law, this question of whether his allegations fit within the imminent danger framework, I think that that is a pure legal ruling that necessarily would be entitled to de novo review. I don't think that there's necessarily a mixed question or much of a mixed question there at all. Just on our second order, which you point out and both sides recognize, which recognized that the District Court could go either way on this issue. I mean, one way to look at that is that that was confused. Another way to look at it is that contemplated that the District Court did have some discretion to go a different way from how the appellate court, our court, had gone on the IFP on appeal status. Well, Your Honor, we wouldn't presume to tell the court what it meant in that order. We think that whatever it meant, it could not have superseded or otherwise done away with the court's prior finding that Mr. Williams was entitled to imminent danger relief. And if there were any doubt on that question, we think that the court's later order, the August 2013 order, resolved it, making clear that that purely legal ruling was law of the case. What muddies it up is that there was a period of time when these cases were coming down where some cases indicated that a mandamus petition was not covered by the statute because it talks about a cause of action and appeal, and the mandamus was neither one. And there were a couple of orders that we issued during this contemporaneously stating that mandamus wasn't covered by the three strikes provision. And there's a case that came down right after or right before one of these orders. But anyway, tell me, when we said in that January 4th order that the court takes no position on whether he has to prepay fees, the way I look at that is that we have case law saying that whether somebody's in imminent danger depends on what the situation was at the time their case is filed in the district court, right? That's correct. And the whole point of the January 4th, 2012 order was requiring the district court to file the case. The district court hadn't filed the case. That's right. So we couldn't have made a determination about the imminent danger in the January 4th order for no other reason. The case hadn't been filed, and it may well have been that his situation had changed. But I take your point to be that the situation didn't change. The complaint was still the same. The allegations were still the same when it got filed in the district court. So the district court was looking at exactly the same thing that our court looked at. That's correct, Your Honor. And I think that's sort of the interesting part about this case is that the core document, the core universe of evidence that both the district court and this court could look at to determine Mr. Williams' entitlement to relief hasn't changed, and it hasn't changed since he initially tried to file it. But it could have. It could have changed. And if it had changed, then the district court was not bound by whatever ruling we made since the lynching. I think that's right. If it had changed, it might have been a different question. But the point here is that it did not, and that the same allegations of imminent danger have underwritten this case from the very beginning. So, yes, I mean, the January 4th order says what it says, but it certainly could not have unwound this court's prior determination that the imminent danger allegations in Mr. Williams' complaint were sufficient for relief under 1915G. And I think that's sort of the ‑‑ that is effectively dispositive in this case, we think, because, again, it would be truly anomalous for this court now for a fourth time to say, based on the same information and the same complaint and the same allegations of imminent danger in the same case, that Mr. Williams suddenly, for no reason for a change in the record, no longer qualifies for this relief. And we think that the court can either base it in terms of law of the case or, if it's not inclined to do so, it should at least keep that in mind, that it would be an anomaly for the court to now change its position. It's dispositive. I'm going back to where I was, but it's dispositive if the standard of review is de novo, but not necessarily if it's deferential. That's why I've been focused on the standard of review. No, and I take your point, Your Honor. But I understand your arguments then about why it's de novo, so I take those arguments. But if the court isn't inclined to decide this on the law of the case grounds, we think that the district court's judgment still must be reversed because Mr. Williams's allegations independently indicate that he is entitled to relief under the imminent danger exception as construed in this court's precedence. For example, Mr. Williams alleges that he suffers from type 1 insulin-dependent diabetes and that he's been denied access to a diabetic dietician as well as an endocrinologist. He also alleges that he's been put into solitary confinement, but that he's been denied access to adequate medical care and that prison officials have interfered with that care and with his meals that are arranged pursuant to special dietary needs. Let me ask you, though, looking, Mitchell requires, our Mitchell decision requires a whole lot of detail. Now, you just said it required an endocrinologist. Is that in any of his allegations, who he's seen, what they've advised, what hasn't been done? I got the impression from his. I don't think that it's in his complaint, Your Honor, but at the same time I don't necessarily think that Mitchell requires it to be in his complaint. Why not? Well, in this court, in Mitchell, this court made clear that what it was looking for was enough from the prisoner in order for the court to infer, at least in the context of chronic diseases, that the prisoner had a chronic disease and that prison officials had failed to treat it. Now, yes, it discussed sort of the contrast between Mr. Mitchell's complaints in that case and other cases. But I mean, we're not doctors, and if somebody says I have hepatitis,  and if he also says, and they won't even listen to me, and this is happening to me, and so forth. But a lot of the stuff that he's got in his complaint, you know, I don't know whether, what type of treatment's needed, and he didn't tell us what type of treatment was needed and what he'd been denied. Sure. But I think it's important to remember that Section 1915G is not supposed to be a difficult bar for relief, that the prisoner is not supposed to be required to put through or to produce substantial amounts of evidence in order to show that he is under imminent danger. This is a threshold ruling that, at bottom, simply determines whether a prisoner must pay a court's docketing fee up front, all in one lump sum, or over time, according to Section 1915's payment scheme. So to require so much detail from a prisoner in his complaint, in his initial document filed with the court, we think is not necessarily consistent with Section 1915G, or really with this Court's precedents. I think, you know, in Mitchell, this Court also made clear that the imminent danger allegations would not be subjected to a heightened pleading standard, that they would be measured against the same sort of general and very permissive notice pleading standard applicable to all pro se prisoners. So I think that the question is, has Mr. Williams alleged enough to allow this Court to infer that he, one, suffers from a serious medical condition? I think that that's fairly clear. And also that he's been denied adequate treatment. And we think that that also is clear. Now, yes, he could have added more information, but we don't think that that's necessary in order to meet such a low bar for relief. And that's, so in addition to, so I think it's, I'm sorry, let me step back. The government at no point explains why Mr. Mitchell's, or excuse me, Mr. Williams' allegations are insufficient under this Court's precedent. And instead of explaining why under existing law, the government takes the, the government instead argues that the Court should adopt a new standard for imminent danger relief that takes into account the likelihood of his underlying, that his underlying claims will succeed on the merits and the degree to which his imminent danger allegations are connected to those claims. And we think there are at least three problems with that argument. The first I've already mentioned is that Mitchell does not require any special pleading burden at the imminent danger stage. It's supposed to be a very low bar for relief. And second, considering the merits of Mr. Williams' claims at this preliminary stage would be at odds with the PRA's structure and its text, and every other circuit that has considered whether to look at the merits at the, at the imminent danger stage has expressly, expressly rejected that idea, specifically because it is such a low bar for relief. And we think that it's telling that the only support that the government cites for its, its merits inquiry at the imminent danger stage is Thomas. But Thomas is wholly inaccurate. At first, Thomas, or excuse me, Thomas did not involve the imminent danger exception at all. So that's, that's strike number one. But second, and perhaps most important, all the Court in that, all this Court said in that case was that where an appeal has been dismissed, has been previously dismissed, this Court would not reinstate it without some showing that the, the appeal would not be frivolous. But that hasn't happened in this case. No Court has, has looked at Mr. Williams' allegations, and no Court has dismissed his complaint. Well, I've looked at them, and they're totally frivolous. Well, I appreciate that, Your Honor, but we, what I mean is that no Court has actually dismissed the allegations of harm. I don't mean that. I mean the, the gist of the complaint is he wants the President of the United States to investigate the North Carolina prison. I mean, where does, where does he get the authority for that? Well, I'm, you know, I appreciate your position, Your Honor, but also he, he does state a claim under the Freedom of Information Act that as the government acknowledges, is not patently frivolous. So I, I don't, I don't think that at this stage it would be right for the Court to assess the in nexus, it seems to me, between the allegation of, of imminent danger on the one hand, and, and the relief sought in, in the complaint, doesn't there? I mean, you can't, a prisoner can't come in and say, I'm in imminent danger because, because there, there, there's somebody down the cell block who's, who's out to get me. And then he brings a complaint, and the complaint is that the food is no good in the prison. I mean, that doesn't work, does it? There has to be a nexus. Well, I, we don't think so at the imminent danger stage. And first, we note that there's, there's no support for such a nexus requirement in the statutory text. But also, and perhaps more important, imposing one in this case would be inconsistent with this Court's decision in Ibrahim, where the Court there granted imminent danger relief with respect to all of Mr. Ibrahim's claims, including his First Amendment claim, or excuse me, even including his, his pre-exercise claim, on the basis of imminent treatment of hepatitis C and prostate cancer. Now, clearly, those imminent danger allegations have nothing to do with whether his First Amendment rights have been violated. What case is that? That's Ibrahim, I haven't cited in our brief, excuse me, Your Honor. Is that up? I've cited in your brief? Yes, Your Honor, in both briefs. It's Ibrahim, the District of Columbia, 463 F-33. This Court's decision from 2009. Oh, right. That's the case where we said you can screw the allegations liberally, right? Yes, Your Honor. The Court also said that in Mitchell as well. Well, in Ibrahim alleged, diminished liver function, damage, fibrosis, cirrhosis, that's a lot more detailed than Your Honor. Well, it's, it's a lot, it's a lot more, but we don't think that it's necessarily more detailed, and again, or that so much more detail would be required. But again, the question of whether he had alleged with more detail, I think, is separate from Judge Randolph's question, which was, does there have to be a connection? And clearly, there does not have to be a connection in this case, because otherwise, Mr. Ibrahim's claims, or at least some of them, would not have been allowed to proceed. If there are no more questions, Your Honor, sir. Thank you. Well, we wouldn't have. Oh, I'm sorry. What you just said, we wouldn't have decided that at the IFP stage. I mean, we wouldn't have said, yes, you get to file without paying anything, and these claims are gone. Well, that's, I think that's right, Your Honor. Or is that what you just said? No, I'm, I'm sorry. I, I think, I think that's right. The court could not have dismissed individual claims in that case. But the point is that it allowed IFP, or excuse me, it allowed imminent danger relief in that case, even though some of Mr. Ibrahim's claims had no connection to his imminent danger allegations. Well, but I, I don't, I think what Judge Randolph is saying is you've got to have a credible claim. And Ibrahim, I don't remember what he alleged, but I think he did have at least one, maybe not, maybe Mr. Birch remembers, but. I'm sorry, I didn't hear. Do you remember what Mr., other than the frivolous ones, what Mr. Ibrahim's. I believe he had Eighth Amendment claims as well as First Amendment claims. Okay. All right. We'll give you some time. Great, thank you, Your Honor. Okay. Mr. Birch. May it please the court, good morning. Alan Birch on behalf of the government. I'd like to talk about the law of the case first and then turn to the merits of the imminent danger and then finally touch on the nexus requirement. With respect to the law of the case, I want to first make sure that the government's position is clear in what we're asking for. I regret that I didn't think it was that clear from my brief when I went back and reread it. We're asking the court to affirm the judgment below. We do not necessarily wish to disturb his IFP status on appeal. We don't think the two need to go together. If they do, then we would ask the court to do that. But I think we can get to the affirming of the district court without disturbing his IFP status on appeal. And that would be if the law of the case does not control. How do we do that if it's the same inquiry? Sorry? How do we do that if it's the exact same inquiry? It would be, I think the word was anomalous. Yes. It's just certainly an anomaly at some level, Your Honor. I have six reasons I'd like to get into. Before I do that, I'd like to say that law of the case doctrine can sometimes include the mandate rule. And I think it's important that we appreciate that that's not what's going on here. This Court's decision in the mandamus appeal, the first appeal, was not a review of the district court's finding on imminent danger. It was simply this court in the first instance getting to that issue first. And so it's not an application of the mandate rule. And I think it's important that we sort of understand that it doesn't automatically control. No, I wasn't saying that. I'm just saying if we've – I just want to make that clear. I think we're all on the same page about that. If our order said that there is imminent danger, therefore IFP on appeal, it's unusual to turn around and say the district court is okay and say no imminent danger if it's the exact same inquiry. Right. So this brings me to my six reasons why I think that the law of the case would not necessarily – should not control here. The first is that simply the January 4, 2012 order explicitly said we take no position on the district court's determination. And so it phrased it as determination on – position on prepayment of fees. That certainly includes this issue. So I think that that's a fair reading of that word. What is the fair reading? That it doesn't control any of the district court's findings with respect to prepayment of fees. I don't think – you're reading a bit more into it than it actually says. We take no position on the prepayment of fees. Right. And as I said to counsel or amicus counsel, that makes perfect sense because we had precedent at that time that said you decide whether a person is in imminent danger at the time the complaint is filed. And the complaint hadn't been filed. There may have been a change in circumstances for all we know. He may have been being treated for diabetes and all the other problems. Right. But nothing changed. And so the determination of our court, assuming we determined he was in immediate danger or imminent danger, is the same determination on the same facts as Judge Kavanaugh said? Well, let me be clear. My next reason goes to that. I mean, I think that with respect to the January 4, 2012 order, it's at least arguable that the court is saying we're not going to control any of these issues. But I fully admit that it's not dispositive of the whole issue. It is important, however, that you look to the fact that it's not only the complaint, but it's also the motion attached that requests the relief. The motion is filed at a different date and time. The motion is supported by different documents. And both, I believe, Abraham and Mitchell, both talk about looking to the documents as well. The motion, certainly at the point in time, is the same. What was the motion filed? It was filed after the case was documented? Which motion? The one you're talking about. Well, he filed a motion for IFP on remand in addition to the motion that he attempted to file the first time. The first time, he was not allowed to file anything. The district court returned his attempt to file. Let me put it. Let's cut to the chase. What papers from this prisoner were before the district court that were not before the court of appeals? I think everything that was presented to the district court, as I understand it, was made a part of it. I didn't think there was any difference between the record before the district court and the record before the court. There were additional materials that he put into play with respect to each motion. The case law does talk both Mitchell at 587-421. It talks about an ongoing threat. Pinson, as well, picks up that 761F3 at page 5. It does talk about the imminent means that there's an ongoing threat, which suggests that the court can look past, at least in a limited respect, the date of the complaint. Again, I'm not sure that these two reasons so far are sufficient. I would point to the fact that a mixed question of law and fact. When I wrote the brief, I thought we were focusing mostly on the law of the case, but I do see now that if you're going to get into the factual sufficiency, that it can become a mixed question of law and fact, and I think there is room for the court to apply a different, less than de novo review. Indeed, when you're talking about a different court's determination of these privileges, this is a separate reason, my third reason. Actually, my fourth reason. I looked at some other courts on this, and there's no sophisticated analysis of this question, but it does seem like most of the courts are applying to no vote review of this kind of determination. It certainly follows with taking your facts from the complaint, but if you take your facts from the complaint in a motion, then I think that that breaks down a little, and I think it is more appropriate to use a mixed question at that point. Certainly, if you're going to look at an ongoing threat, then it's appropriate to look at updated motions papers and evidence supporting that. So he's in imminent danger when he's in the Court of Appeals, but he's not in imminent danger when he's in the district court? That's what you're asking us to decide. The imminence is judged by whether it's in part, whether it's an ongoing threat. So, yes. The other things I would point out, this has mattered to some courts when applying law of the case. One of the things some courts have looked at is whether the issue was contested the first time around, and if it was not contested, less likely to create a law of the case application. I think that's appropriate here as well. And finally, Mitchell, along those lines, Mitchell noted that entitlement to IFP status is, quote, is not a traditional adversarial issue, end quote. That's at 587 at 3rd 419. I think that supports the notion that if it's uncontested, that the court should be more reluctant to apply law of the case. I don't think any of these factors are necessarily determinative on their own, but they add up to what I would suggest is a sufficient basis for the court to say, we're not going to apply law of the case here, but certainly not in a way that would be equivalent to application of a mandate rule. With that, I turn to the merits. I don't have a great deal to say about that. I would make two or three points on that. I think the analysis is fairly simple. It comes down to the level of detail about the threat and the treatment, and whether this case is more like Ibrahim, where the detail was deemed sufficient, or more like Mitchell, where it was deemed insufficient. I think with respect to the conditions that he suffers from, I think it's arguably very close to Ibrahim. Where he falls, however, is in the treatment. He has very little description of what kind of treatment he needs. I think it's much closer to the description in Mitchell. Mitchell said that he merely alleges that he needs medical treatment without providing enough detail as to what medical treatment. Here, the interesting thing about one unusual fact is that Williams claimed, if you look at appendix page 131, his complaint, he claims that he refused to be treated. He refused to let the doctors treat him. Now, he's also demanding treatment at the same time, so I think the reconciliation of those is that we don't really have any authority on why he would need treatment, what that treatment would be, why it's credible that he needs the particular treatment. It's merely his opinion that he needs this dietician and he needs an endocrinologist. We don't have any allegations that would make that plausible, that that's what he really needs. That's why I think the court would be within the case law in Mitchell and Ebring to deem this insufficient. The only other thing I would say about the merits would be the nexus requirement. Now, I regret not citing the Second Circuit decision in Pettis on that, but I would ask the court to consider that at this point. Pettis v. Morgenthau at 554 F. 2nd, 293, and there's a discussion, 297 and 98, about its affirming the district court's application of a nexus requirement. Now, the nexus requirement in Pettis was fairly minimal. It merely required that the claims would pass the equivalent of Article III standing. In other words, that the claims have some connection to the imminent danger, that there's a common causation and redressability. And this minimal screening would only kick the case out if every single one of the claims failed. So that explains why it wouldn't change the result in Ebring, for example, to apply this nexus requirement. And the facts in Pettis are very closely parallel to the facts here. The reason that Mr. Williams can't pass the nexus requirement is that he hasn't sued anybody from North Carolina, and that none of the defendants here can affect the change. His claim for being required to, requiring the- Doesn't that get into the merits a bit? I mean, I realize- But at that point, it's essentially- Assuming the claims are just, I'm not saying this is my view, but assuming they're a bit far-fetched, there still is a theory by which they would- There is a theory, but then it becomes entirely speculative that the investigation would lead to regressibility of his claims. I mean, that's where it breaks down, even on a theoretical level. And the- And the FOIA claim? And the FOIA claim, the regressibility is even weaker, that there may be some merit to the FOIA claim, although I think it's arguably dismissible under 12b6, but- I can't remember, did he file a claim? Did he exhaust his administrative remit? We haven't gotten that far. The record doesn't say that. And so, even on the assumption that it had merit, he would fail the regressibility requirement under it, that it has very little to do with his imminent danger. And so, it would clearly fail the nexus requirement, and that's why this case makes so much sense to apply it. As for the textual basis for the nexus requirement, I would say that the fundamental determination of IFU status is discretionary. The statutory hook is the word may in 1915a, and that's what has provided the textual hook for the entire structure that the Court has built up in cases like Butler and Mitchell, which define the district court's use of its discretionary power under the statute by accumulation of case law. So, this could certainly exist quite comfortably within that statutory hook. Pettis itself says that it makes sense to apply a sort of standing analysis because in its explanation it's free to presume that Congress had standing in mind when it crafted the PLRA, and that if this is a fundamental jurisdictional requirement of any case, it can easily be transported in part into the screening analysis. So, there is plenty of support for reading this into the statute and applying it, and it wouldn't require the Court to rethink any of its precedent, for example, in Ibrahim. The facts of this case strongly suggest that it's appropriate. If there are no other questions, we would ask the Court to affirm the judgment below. Thank you. Thank you. Does Mr. Capehart have anything? Why don't you take a couple minutes, Mr. Capehart? Just three quick points, Your Honor. The first, counsel, my friend refers to the ongoing threat issue, and I think that it's important to separate out the types of ongoing threats that we're talking about here. The first is we have an ongoing threat for purposes of the initial imminence and danger determinations for the imminent danger question. And in that context, this Court said, or this Court at least implied, in Ibrahim that inadequate treatment for a chronic disease satisfied both requirements. But I think that it's important to separate out the question of whether or not an ongoing threat from an improperly treated chronic disease is sufficient for imminent danger relief from the question of whether that needs to be an ongoing threat at subsequent stages of the litigation. We think that this Court's decision in Penson definitively forecloses that argument, because in that case, this Court made clear that the imminent danger allegations or the question of the imminence of the danger is fixed at the time of the filing of the complaint. What happens after the complaint is wholly irrelevant, and we think that that would include later stages of the litigation. This Court and district courts must look to the complaint for the allegations for imminent danger. And in the context of an inadequately treated chronic disease, the imminence and danger requirements are satisfied simply by those allegations. And second, I want to just address a quick factual point. My friend refers to Mr. Williams's statement that he had refused treatment. And we think that that's probably a mischaracterization of what Mr. Williams meant in his complaint. What he said, or what he was at least implying, I think, was that he had less than absolute faith in the quality of care that he was receiving from prison officials, not that he had refused treatment. And we think the rest of his complaint, and, in fact, the rest of this case, bears that out. He clearly was not refusing treatment. He was trying to get treatment in any way that he could. And we think his – I'm sorry, I might just make my last point. Go ahead. Finally, you know, this Court has not adopted a connection requirement. And, in fact, the Second Circuit is the only circuit, we think, that has adopted a connection requirement. As I explained in my opening, we don't think that it makes good sense to do it here for a number of reasons. You know, first is that it's not supported by the statutory text. It is not consistent with this Court's precedent in – or this Court's decision in Ibrahim. And we also don't think that it makes good sense as a matter of policy for pro se prisoners because, effectively, it turns the – or, first, it adds an amorphous and atextual precondition to relief for the imminent danger inquiry. And, also, it imposes this requirement at a stage of a prisoner's case where he's unlikely to have any opportunity to remedy it. In fact, that's precisely what happened here. The district court didn't dismiss Mr. Williams's complaint. It simply declined to docket it. So there was no way that Mr. Williams could have remedied any deficiencies that would have been – or that the district court might have found if, you know, if, for example, as would have been the case if his complaint had been docketed, and actually if the government had, at that point, moved to dismiss or move to some other way to get the case tossed out. And, in any event, we think that if there – if the Court is inclined to impose a connection requirement, that should be something that it allows the district court to do in the first instance, to analyze whether a sufficient connection is there. Because, again, no court has actually adjudicated the merits of Mr. Williams's claims or even looked at them, and no court to date has dismissed that suit. If there are no other questions. Thank you. Thank you. Mr. Capehart, you were appointed by the Court as amicus, and we thank you for your very able assistance.
judges: Henderson, Kavanaugh, Randolph